# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:10cv112

| | |
|---|---|
| SHAYE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CLEVELAND COUNTY, DIVISION ) | |
| OF SOCIAL SERVICES, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pending before the Court is Defendants' Motion for Summary Judgment [# 18]. Plaintiff brought this action against Defendants asserting a claim pursuant to 42 U.S.C. § 1983, state law claims for negligence, negligent supervision, negligent infliction of emotional distress, and for violation of the North Carolina Constitution. All of these claims stem from the decision of employees for the Cleveland County Department of Social Services ("DSS") to require Plaintiff to have supervised visitation with her children for several months in response to a report that she was, among other things, taking provocative, naked pictures of one of her children. Defendants move for summary judgment on all of the claims. The Court **GRANTS** Defendants' motion [# 18].

-1-

## I. Background[1]

### A. The Parties to this Dispute

Plaintiff is a resident of Cleveland County, North Carolina. She has two children with her former husband, Dale Truax. Her youngest child, N.T., was born on August 28, 2000. After Plaintiff and Truax separated in 2006, Plaintiff moved out of the home they shared. Plaintiff and Truax, however, maintained shared custody of the children.

Defendant DSS is a local governmental agency that investigates reports of child abuse and neglect. Defendants Tamara Hardin, Dante Murphy, and Karen Ellis (the "Individual Defendants") were all employed by DSS during the relevant time period.

Defendant Ellis, who became the director of DSS in 2008, was the deputy director of DSS during the time period giving rise to this dispute. Defendant Hardin was a child protective services assessor during the relevant time period. As an assessor, Defendant Hardin responded to reports of child abuse by assessing the risk of neglect and abuse in homes. Defendant Murphy was a social worker who responded to calls that came in after-hours when most of DSS's employees were

---

[1] The Court has viewed the facts and drawn all reasonable inferences in the light most favorable to Plaintiff, as required when reviewing Defendants' Motion for Summary Judgment. See United States v. Diebold, Inc., 369 U.S. 645, 655, 82 S. Ct. 993, 994 (1962).

not working.

B.   The Incident Giving Rising to this Dispute

On April 23, 2007, DSS received a report that Plaintiff had taken naked pictures of N.T., that N.T. was not fully potty-trained, and that other family members were involved in pornography. There was also an allegations that Plaintiff had inflicted bruises or marks on N.T. while disciplining the child. Upon receiving this report, a social worker went to the home of Truax and interviewed him. Truax informed the social worker that Plaintiff had been sexually abused as a child. Defendant Hardin also interviewed N.T., who disclosed that while on vacation with Plaintiff he was taken to a "mansion", and that Plaintiff took pictures of him with his buttocks in the air, that Plaintiff "wiggles" his penis, and goes "whomp, whomp, whomp."

The day after receiving the report, Defendant Hardin met with Plaintiff. Plaintiff denied inappropriately touching N.T.'s penis. Plaintiff, however, admitted to taking one of the naked photos of N.T. Plaintiff contends that the rest of the pictures were taken by N.T.

As a result of this meeting, Defendant Hardin completed a safety assessment with Plaintiff, which she signed. A safety assessment is a plan DSS puts in place with the family to ensure a child's safety. The safety assessment Plaintiff agreed to

included that she would not take pictures of her children unless they were fully dressed, that she would encourage them not to run around without clothes on and to get dressed after bathing. In addition, Plaintiff agreed to delete the pictures of N.T. from her computer. Finally, Plaintiff agreed to only use discipline that was below the waist and did not result in marks or bruises. Plaintiff, however, retained custody of the children.

Approximately two weeks later, Plaintiff's case was staffed with management, which included Defendant Hardin, Julia Kelly, Defendant Hardin's supervisor, and Pam Bright, a DSS program manager. After discussing Plaintiff's case with her supervisor and the program manager, they decided that the safety plan needed to be changed to only allow Plaintiff supervised visitation with her children. This decision was not based on any additional information received by DSS.

After the decision to alter the safety plan was made by these individuals, Defendant Hardin contacted Truax to inform him that they changed the safety assessment to allow only supervised visitation with the children. Defendant Hardin did not call Plaintiff to notify her of the changes. Instead, Defendant Hardin attempted two home visits to notify Plaintiff in person of the changes. Defendant Hardin, however, was unable to get in contact with Plaintiff.

On the evening of May 3, 2007, Defendant Murphy went to Plaintiff's home with a law enforcement officer in order to get her to sign a new safety assessment that included supervised visitation. Plaintiff was upset and refused to sign the safety assessment. Shortly thereafter, Truax arrived at Plaintiff's house and signed the assessment with Defendant Murphy. Truax then left with the children.

A child medical examination and a child mental health evaluation were then given to the children. Defendant Hardin got the report of the child mental health evaluation on July 30, 2007. This evaluation did not find any history of sexual abuse. After receiving the report, DSS unsubstantiated the case, meaning that it found no findings of sexual abuse. As a result, the requirement for supervised visitation ended on August 3, 2007, and DSS closed the case. This action ensued.

**II.     Legal Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not defeat a motion for summary. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). Rather, there must be a genuine issue of material fact. <u>Id.</u> "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). It may, however, consider the other materials in the record. Id.

### III.  Analysis

#### A.  Section 1983

Plaintiff asserts a Section 1983 claim against Defendants based on their alleged deprivation of her constitutional right to have "care, custody, and control" of her minor children. (Pl.'s Compl. ¶ 65.) Plaintiff only asserts Section 1983 claims against Defendants Ellis, Hardin, and Murphy in their official capacities; Plaintiff does not assert individual capacity claims against the Individual Defendants. (Pl.'s Resp. Summ. J. at 21-22.) The official capacity claims against the Individual Defendants, however, are redundant of the claims against DSS. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985); Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding that official capacity Section 1983 claims against university administrators were duplicative of claims against the university's Board of Governors and subject to dismissal); Love-Lane v. Martin, 355 F.3d 766, 783 (4th

Cir. 2004) (holding that official capacity Section 1983 claims against school superintendent were duplicative of the claims against the school board and subject to dismissal.). Accordingly, the only question for the Court is whether DSS is liable under Section 1983 for the alleged deprivation of a constitutional right.

In order to hold a municipality liable for a constitutional violation pursuant to Section 1983, a plaintiff must demonstrate that the violation was caused by an official custom or policy of the municipality. Love-Lane, 355 F.3d at 782; Walker v. Prince George's Cnty., MD, 575 F.3d 426, 431 (4th Cir. 2009). "[A] municipality cannot be held liable simply for employing a tortfeasor." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). As the United States Court of Appeals for the Fourth Circuit explained in Riddick:

> Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

Riddick, 238 F.3d at 523 (quoting Pembaur v. City of Cincinnati 475 U.S. 469, 479, 106 S. Ct. 1292, (1986)); see also Spell v. McDaniel, 824 F.2d 1380, 1396-87 (4th Cir. 1987).

A policy for which a municipality may be held liable under Section 1983

may arise through the adoption of an express policy, such as a regulation or ordinance that specifically authorizes a constitutional violation, or through the decision of an individual with final policy making authority. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Spell, 824 F.2d at 1385. "'Policy' in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternative' respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Spell, 824 F.2d at 1386. "Correspondingly, 'policymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." Id. The question of whether an official has the necessary policy making authority is a question of state law. Lytle, 326 F.3d at 472.

Here, Plaintiff contends that DSS is liable as the result of the decision of an individual with final policy making authority. Specifically, Plaintiff contends that the director of DSS is an individual with policy making authority, and that the decision to restrict Plaintiff to supervised visitation constitutes a policy that can form the basis of Section 1983 liability. Defendants do not dispute that the director of DSS is a policymaker under state law. Rather, Defendants contend that the record is devoid of any evidence that the decision to restrict Plaintiff to

supervised visitation was made by the director. The Court agrees.

The decision to restrict Plaintiff to supervised visitation was made by Defendant Hardin, her supervisor, and the program manager. (Hardin Dep. 25:20-27:9, Nov. 22, 2010.) Plaintiff acknowledges as much in her Response. (Pl.'s Resp. Summ. J. at 7.) Although in certain limited circumstances a municipality may be liable under Section 1983 where a policymaker ratifies the actions of his or her subordinates, "[s]imply going along with the discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S. Ct. 915, 927 (1988). And the record in this case is devoid of any evidence that the director of DSS, as the final policymaker, expressly approved the decision to restrict Plaintiff's access to her children, much less that this decision was cast in the form a municipal policy. See Id. Moreover, there is no evidence that the director was even present at any of the meetings where Plaintiff's case was discussed. At most, Defendant Ellis, the deputy director at the time, was present at a meeting where Plaintiff's case was discussed with members of the community. (Ellis Dep. 8:7-9, 11:9-13:5, Nov. 22, 2010.) This meeting, however, occurred after the decision to restrict Plaintiff's access to her children was made.

In response to Defendants' Motion for Summary Judgment, Plaintiff has not

presented the Court with any evidence that an authorized policymaker approved the decision of a subordinate and the basis for that decision such that the policymaker's ratification of the decision is chargeable to the local government because of the finality of the policymaker's decision. See Praprotnik, 485 U.S. at 127, 108 S. Ct. at 926. Accordingly, Plaintiff has not shown an official policy that can form the basis of Section 1983 liability, and the Court **GRANTS** Defendants' Motion for Summary Judgment [# 18] as to the Section 1983 claim.

   B.   **Plaintiff's State Law Claims**

Plaintiff also asserts a number of state law claims against Defendants. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). The state law claims do not implicate any significant issues of federal policy and raise issues of state public policy that should be decided by the state courts. Accordingly, the Court **REMANDS** the state law claims to the Superior Court of Cleveland County.

   IV.   **Conclusion**

The Court **GRANTS** Defendants' Motion for Summary Judgment [# 18] as to the Section 1983 claims. The Court **REMANDS** the remaining state law claims to the Superior Court of Cleveland County. The Court **DIRECTS** the Clerk to **CLOSE** this case.

Signed: August 31, 2011

_Dennis L. Howell_
Dennis L. Howell
United States Magistrate Judge